UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MURRAY PAVING & RECLAMATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> INGERSOLL-RAND EQUIPMENT & SERVICES COMPANY and INGERSOLL-RAND COMPANY, <br><br> Defendants. | CIVIL ACTION No. 04-10328 GAO |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>INGERSOLL-RAND COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>**

This is a garden-variety breach of warranty case governed by Article 2 of the Uniform Commercial Code. Plaintiff Murray Paving & Reclamation, Inc. ("Murray") claims that a "paver" purchased from Ingersoll-Rand Company ("Ingersoll-Rand") in 2003 does not work, allegedly in breach of express and implied warranties. Even though it is undisputed that Ingersoll-Rand has always offered to make repairs to the paver pursuant to the paver's express warranties (and even though plaintiff recently re-sold the allegedly "worthless" paver to a third party for 85% of the original purchase price), plaintiff nonetheless seeks a full refund of the purchase price and consequential damages. Plaintiff's claims fail as a matter of law because the paver's warranties (1) expressly disclaim all implied warranties, (2) expressly limit Ingersoll-Rand's liability and obligations to repair of the paver, and (3) expressly disclaim all consequential damages. Accordingly, judgment should enter for Ingersoll-Rand on each count in plaintiff's Complaint pursuant to Fed. R. Civ. P. 56.

# STATEMENT OF MATERIAL FACTS
# AS TO WHICH THERE IS NO GENUINE ISSUE[1]

**A.    Ingersoll-Rand Sells Pavers and Does Business As Ingersoll-Rand Equipment & Services**

1.      Ingersoll-Rand is a New Jersey corporation that manufactures and sells a variety of products, including Blaw-Knox® pavers, which is the product at issue in this case. Statement of Undisputed Facts, submitted herewith ("SUF"), ¶ 1. Attached hereto as Exhibit A for background purposes are Ingersoll-Rand marketing materials concerning the type of paver at issue.  SUF, ¶ 1.

2.      Ingersoll-Rand sometimes does business as Ingersoll-Rand Equipment & Services ("IRES") for the purpose of distributing Blaw-Knox pavers and various other Ingersoll-Rand products.   IRES is not incorporated. SUF, ¶ 2.

**B.    Plaintiff is a Sophisticated Purchaser of Industrial Equipment**

3.      According to plaintiff's Complaint ("Complaint"), Murray is in the business of installing streets, sidewalks, tennis courts and parking lots, which require the use of pavers. Murray contracts with private organizations, the Commonwealth of Massachusetts, and various municipalities and other political subdivisions within the Commonwealth of Massachusetts for this work.  Complaint, ¶ 5; SUF, ¶ 3.

4.      "Murray is and has been, a customer of Seller for many years, and has purchased many types of equipment and machinery from Seller, for use by Murray in its business. Murray is intimately familiar with paving equipment, in general, and 'pavers' in particular, and has purchased and used many 'pavers' during its existence…"  Complaint, ¶ 5; SUF, ¶ 4.

---

[1] Ingersoll-Rand accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

C. **Plaintiff Purchased the Paver from Ingersoll-Rand Pursuant to the Terms and Conditions of Sale**

5. On or about May 1, 2003, Murray purchased a Blaw-Knox paver, model no. FF4410 ("Paver"), from Ingersoll-Rand for $230,100.[2] SUF, ¶ 5. A copy of the sales order for the Paver, dated May 1, 2003 ("Sales Order"), was attached to the Complaint and is attached hereto as Exhibit B. SUF, ¶ 5.

6. The Sales Order provides as follows: "THIS TRANSACTION IS SUBJECT TO INGERSOLL-RAND COMPANY STANDARD TERMS AND CONDITION." SUF, ¶ 6.

7. Ingersoll-Rand's standard Terms and Conditions of Sale consist of a single-sided, one-page document, which was attached to both the Sales Order and the Complaint ("Terms and Conditions"). SUF, ¶ 7. A copy of the Terms and Conditions is also located at Exhibit B.

8. The Terms and Conditions begin by stating the following:

> The Terms and conditions of Sale outlined herein shall apply to the sale by Ingersoll-Rand Company (hereinafter referred to as Equipment). Unless prior written agreement is reached, it shall be understood that the Company's proceeding with any work shall be in accordance with the terms and conditions outlined herein.

SUF, ¶ 8.

9. Section 8 of the Terms and Conditions—titled "Warranty"—states that the equipment will be free from defects and Ingersoll-Rand shall repair any such defects, as follows:

> The Company warrants that new Equipment manufactured by it and delivered thereunder will be free of defects in material and workmanship for a period of three (3) months from the date of shipment, whichever shall occur first.

\* \* \*

---

[2] Plaintiff paid a net purchase price of $236,775 for the Paver, which included $230,100 for the Paver, $5,000 for an extended warranty, $2,400 in freight charges and $11,275 in sales tax, minus $12,000 for a piece of machinery traded in by plaintiff. SUF, ¶ 5 n.2.

> The Purchaser shall be obliged to promptly report and failure to conform to this warranty to the Company in writing within said period, whereupon the Company shall, at its option, correct such nonconformity, by suitable repair to such Equipment or, furnish a replacement part F.O.B. point of shipment, provided the Purchaser has stored, installed, maintained and operated such Equipment in accordance with the good industry practices and has complied with specific recommendations of the Company.

SUF, ¶ 9.

**D.      The Terms and Conditions Expressly Disclaim All Implied Warranties**

10.     Aside from the foregoing, the Terms and Conditions expressly disclaim <u>all</u> other warranties and states that correction of non-conformities shall constitute fulfillment of all liabilities of Ingersoll-Rand, as follows:

> The effects of corrosion, erosion and normal wear and tear are specifically excluded from the Company's warranty. Performance warranties, if any, are limited to those specifically stated within the Company's proposal.
>
> THE COMPANY MAKES NO OTHER WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER, EXPRESSED OR IMPLIED, EXCEPT THAT OF TITLE, **AND ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED.**
>
> **Correction by the Company of nonconformity's whether patent or latent, in the manner and for the period of time provided above, shall constitute fulfillment of all liabilities of the Company for such nonconformity's,** whether based on contract warranty, negligence, indemnity, strict liability or otherwise with respect to or arising out of such Equipment.

(All caps in original; bold emphasis added.) SUF, ¶ 10.

E.  **The Terms and Conditions Also Limit Plaintiff's Remedies**

11.  In addition to limiting the Paver's warranties, Section 9 of the Terms and Conditions—titled "Limitations of Liability"—limits plaintiff's remedies to those remedies set forth in the Terms and Conditions (i.e., repair of non-conformities):

> **The remedies of the Purchaser set forth herein are exclusive,** and the total liability of the Company with respect to this contract or the Equipment and services furnished hereunder, in connection with the performance or breach thereof, or from the manufacture, sale, delivery, installation, repair or technical direction covered by or furnished under this contract, whether based on contract, warranty, negligence, indemnity, strict liability or otherwise, shall not exceed the purchase price of the unit of Equipment which such liability is based.
>
> **The Company and its suppliers shall in no event be liable to the Purchaser any successors in the interest or any beneficiary or assignee of this contract for any consequential, incidental, indirect, special or punitive damages** arising out of this contract or any breach thereof, or any defect in, or failure of, or malfunction of the Equipment hereunder, whether based upon loss of use, lost PROFITS or revenue, interest, lost goodwill, work stoppage, impairment of other goods, loss by reason of shutdown or non-operation, increased expenses of operation, cost of purchase of replacement power of claims of purchasers or customers of Purchasers for service interruption whether or not such loss or damage is based on contract, warranty, negligence, indemnity, strict liability or otherwise.

(All caps in original; bold emphasis added.) SUF, ¶ 11.

12.  Lastly, the Terms and Conditions state that the "right and obligations of the parties shall be governed by the laws of the State of New Jersey." SUF, ¶ 12.

F.  **The Blaw-Knox Warranty Also Limits the Paver's Warranty and Plaintiff's Remedies**

13.  In addition to the Terms and Conditions, the rights and remedies of the plaintiff are governed by a three-year extended warranty that plaintiff purchased from Ingersoll-Rand

when plaintiff purchased the paver ("Blaw-Knox Warranty"). SUF, ¶ 13. A copy of the Blaw-Knox Warranty is attached hereto as <u>Exhibit C</u>.[3]

14. Like the Terms and Conditions, the Blaw-Knox Warranty states that all new equipment will "be free from defects in material and workmanship (when subject to normal and proper usage)…" SUF, ¶ 14.

15. Also like the Terms and Conditions, the Blaw-Knox Warranty states that all defects will be repaired, which is the limit of the manufacturer's liability:

> Notice must be given to the servicing Blaw-Knox distributor upon discovery of such defects, and parts returned for inspection. Parts found defective by Blaw-Knox's inspection will be repaired or replaced without cost, F.O.B. point of manufacture. **The foregoing shall be the limit of Blaw-Knox's liability for such defects.**

(Bold emphasis added.) SUF, ¶ 15.

16. Lastly, the Blaw-Knox Warranty mirrors the Terms and Conditions in that it disclaims all other warranties and indirect or consequential damages, as follows:

> **EXCEPT AS SET FORTH HEREIN, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**, NOR OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, NOR ANY PROMISE BY BLAW-KNOX WITH RESPECT TO THE EQUIPMENT COVERED HEREIN. **IN NO EVENT SHALL BLAW-KNOX BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES**, NOR FOR ANY DELAY IN PERFORMANCE OF THIS WARRANTY.

(All caps in original; bold emphasis added.) SUF, ¶ 16.

---

[3] Blaw-Knox is a trade name used by Ingersoll-Rand for certain products, including the Paver. SUF, ¶ 13 n.3.

**G.   Ingersoll-Rand Offered to Fix or Replace the Paver**

17.   During the Summer of 2003, plaintiff reportedly experienced problems with the Paver and brought the Paver back to Ingersoll-Rand's IRES facility for repairs. Complaint, ¶ 8; SUF, ¶ 17.

18.   Plaintiff then demanded that Ingersoll-Rand take back the Paver and refund the purchase price. Complaint, ¶ 10; SUF, ¶ 18.

19.   Ingersoll-Rand refused to take back the Paver or refund the purchase price in accordance with the Terms and Conditions and Blaw-Knox Warranty (collectively referred to as "the Warranties" or "both Warranties"). SUF, ¶ 19.

20.   Also, in accordance with the Warranties, however, Ingersoll-Rand offered to fix the Paver. SUF, ¶ 20.

21.   Additionally, Ingersoll-Rand offered to replace the Paver with a new machine. In fact, Ingersoll-Rand offered to fly plaintiff's President to the Blaw-Knox factory in Shippensburg, Pennsylvania, to inspect the facility and meet the people who would build the new paver. Murray rejected these offers and instead brought this suit demanding that Ingersoll-Rand take back the Paver and return the purchase price. SUF, ¶ 21.

22.   Ingersoll-Rand has a full-service repair shop and mechanics who are trained to identify and fix problems with Blaw-Knox pavers. Although Ingersoll-Rand is no longer willing to give plaintiff a new paver, Ingersoll-Rand has always maintained that it would repair the Paver pursuant to the Warranties. SUF, ¶ 22.

**H.   Ingersoll-Rand Properly Rejected Plaintiff's M.G.L. ch. 93A Demand**

23.   On or about October 10, 2003, plaintiff made demand upon Ingersoll-Rand pursuant to M.G.L. ch. 93A for Ingersoll-Rand to take back the Paver, refund the full purchase

price, and compensate plaintiff "for all losses suffered to date." Complaint, ¶ 12; SUF, ¶ 23. A copy of the demand letter is attached hereto as <u>Exhibit D</u>.

24. On or about October 21, 2003, Ingersoll-Rand responded to plaintiff's Chapter 93A demand letter by stating that "IR has honored, and will continue to honor, its warranty obligations." SUF, ¶ 24. A copy of Ingersoll-Rand's response letter is attached hereto as <u>Exhibit E</u>.

**I.   Plaintiff Sold the "Unsaleable" and "Worthless" Paver for $200,000**

25. Plaintiff asserts that the Paver is in "unsaleable, unusable and essentially worthless condition." Complaint, ¶ 11; SUF, ¶ 25.

26. Despite this allegation, plaintiff disclosed that it recently sold the Paver to "Aikler Asphalt Paving Co. Inc." for $200,000, which was only $35,100 less than what plaintiff paid for the Paver and extended warranty when new in 2003. SUF, ¶ 26. A copy of the sales contract between plaintiff and Aikler Asphalt Paving Co., Inc. is attached hereto as <u>Exhibit F</u>.

## ARGUMENT

**I.   SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Milton v. Van Dorn Co.</u>, 961 F.2d 965, 969 (1st Cir. 1992) ("[t]he moving party is entitled to judgment as a matter of law if the nonmoving party does not adduce enough evidence to permit a reasonable trier of fact to find for the nonmoving party on any element essential to its claim."). Rule 56 does not permit the nonmoving party to rest upon mere allegations or denials. Rather, it is incumbent upon the nonmoving party to "set forth specific facts demonstrating that there is a genuine issue for trial." <u>Oliver v. Digital Equipment</u>

Corp., 846 F.2d 103, 105 (1st Cir. 1988). The party opposing a motion for summary judgment must establish a fact that is both genuine and material to the disputed claims. Hahn v. Sargent, 523 F. 2d 461, 464 (1st Cir. 1975). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" United States v. O'Connell, 890 F.2d 563, 566 (1st Cir. 1989) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). A factual dispute that is neither genuine nor material will not survive a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  PLAINTIFF'S CLAIMS FOR BREACH OF IMPLIED WARRANTIES ARE BARRED BY THE PAVER'S WARRANTIES.

To the extent plaintiff claims breach of implied warranties, see Complaint ¶ 9,[4] those claims are governed—and ultimately defeated—by Article 2 of the New Jersey Uniform Commercial Code ("UCC"), which "applies to transactions in goods." See N.J.S.A. § 12A:2-102.[5] Section 2-316 of the NJ UCC—titled "Exclusion or modification of warranties"—allows for the exclusions of both the implied warranty of merchantability and implied warranty of fitness, as follows:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warrant of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

---

[4] Paragraph 9 of the Complaint states that the Paver "failed to be able to be operated and to perform in the manner in which Murray had a right to expect, and in which Seller and Ingersoll specifically and **impliedly** warranted to Murray that the paver would perform." (Emphasis added.)

[5] For the Court's convenience, copies of the relevant sections of the New Jersey Uniform Commercial Code are attached hereto as Exhibit G.

See N.J.S.A. § 12A:2-316.

Here, both Warranties specifically identify the implied warranties of "merchantability" and "fitness" in their exclusions. See Statement of Material Facts to Which There is No Genuine Issue, *supra*, ¶ 10, 16. Further, the exclusions in both Warranties are "conspicuous" within the meaning of the UCC, as they are set-off visually from the remaining text by being printed in all capital letters. See Kaplan v. RCA Corp., 783 F.2d 463, 467 (4th Cir. 1986)[6] (applying New Jersey UCC, bold-faced and capitalized provision excluding liability for consequential damages was conspicuous); Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F.Supp. 363, 376 (D.Mass. 1991) (applying Massachusetts UCC, capitalized provision excluding warranties pursuant to Section 2-316 was conspicuous). Therefore, pursuant Section 2-316 of the NJ UCC, any claims by plaintiff for breach of implied warranties fail as a matter of law.

### III. THE DAMAGES SOUGHT BY PLAINTIFF ARE BARRED, AS PLAINTIFF'S SOLE REMEDY IS LIMITED TO REPAIR OF THE PAVER.

Even if plaintiff were correct in its assertion that the Paver was broken and required repairs when the Complaint was filed, plaintiff still would not be entitled to the relief that it seeks. Both Warranties, which are enforceable under the NJ UCC, expressly limit plaintiff's remedy for defects in the Paver to repairs. Moreover, both Warranties expressly disclaim all liability for consequential damages. Therefore, plaintiff's claims for rescission of the contract, return of the purchase price, consequential damages, and damages pursuant to M.G.L. ch. 93A—which are the only prayers for relief in the Complaint—are all barred by the Warranties.

---

[6] For the Court's convenience, copies of all decisions from courts located outside of the First Circuit are attached hereto as Exhibit H.

### A.  <u>Plaintiff is Not Entitled to Rescission or Return of the Purchase Price.</u>

Plaintiff is not entitled to a refund of the Paver's purchase price (Count 2) because both Warranties expressly limit plaintiff's remedy to repair of the Paver. The New Jersey UCC specifically allows for limitations such as those set forth in the Warranties. Section 2-719—titled "Contractual modification or limitation of remedy"—states that an agreement "may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to…repair and replacement of non-conforming goods or parts" so long as "the remedy is expressly agreed to be exclusive, in which case it is the sole remedy," and circumstances do not cause an exclusive remedy to "fail of its essential purpose." <u>See</u> N.J.S.A. § 12A:2-719(1) and (2).

New Jersey case law confirms the enforceability of contract language limiting a party's remedy to repairs under the UCC. In <u>Palmucci v. Brunswick Corp.</u>, 710 A.2d 1045, 1046 (N.J. Super.App.Div. 1998), plaintiff purchased a boat engine which developed problems after three to five hours of use. Plaintiff demanded that the defendant manufacturer refund the purchase price or replace the engine with a new one. <u>Id</u>. Defendant refused plaintiff's demand but offered to repair the engine. <u>Id</u>. The trial court granted defendant's motion for directed verdict, and the Superior Court affirmed, based on the following warranty language which "clearly" and "conspicuously" limited the plaintiff's remedies and the manufacturer's liability:

> Our obligation under this Warranty shall be limited to repairing a defective part, or at our option, refunding the purchase price or replacing such part or parts as shall be necessary to remedy any malfunction resulting from defects in material or workmanship as covered by this Warranty.

<u>Id</u>. at 1046-1048. In response to plaintiff's argument that the NJ UCC "permitted him to revoke acceptance of the engine because the defect substantially impaired the product's value to him,"

the court held that "[t]he provisions permitting revocation of acceptance are inapplicable where the terms of a warranty limit the purchaser's remedies." Id. at 1047, 1048.

Like the boat engine warranty in Palmucci, both Warranties here satisfy the requirements of Section 2-719, thereby limiting plaintiff's remedy to repair of the Paver and precluding plaintiff's claim for rescission of the contract and return of the purchase price. First, the remedies set forth in both Warranties are exclusive. See Terms and Conditions ("The remedies of the Purchaser set forth herein are exclusive…"); Blaw-Knox Warranty ("The foregoing shall be the limit of Blaw-Knox's liability for such defects."). Second, circumstances have not caused the exclusive remedy to fail of its essential purpose. This is not a case where the party making the repairs is unqualified to do so or cannot obtain parts from the original manufacturer. Ingersoll-Rand has a full-service repair shop and mechanics who are trained to identify and fix problems with pavers.

The Court does not need to determine whether the Paver still needs repairs in order to decide this action. All it needs to do is apply the plain language of the Warranties to the UCC. In any event, plaintiff's claims that the Paver is a "lemon" (as represented by plaintiff's counsel at the Scheduling Conference) and in "unsaleable, unusable and essentially worthless condition" (Complaint, ¶ 11) are thoroughly belied by the fact that plaintiff recently sold the Paver, in used condition, for $200,000. The Paver, when new, was only purchased for $235,100 (including the extended three year warranty). If the used Paver could not be repaired, then how did plaintiff sell it for 85% of the cost for a new one? Instead, the foregoing demonstrates that the Paver, even if it was damaged at the time of sale, could be repaired. Accordingly, the Warranties'

exclusive remedy did not fail in its essential purpose of providing the plaintiff with a workable machine.[7]

Because plaintiff's remedy for defects in the Paver is limited to repairs, plaintiff's claim for rescission of the contract and return of the purchase price fails and judgment should enter on Count 2 of the Complaint.

**B.      Plaintiff is Not Entitled to Consequential Damages.**

Pursuant to Section 2-719(3) of the NJ UCC, "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." N.J.S.A. § 12A:2-719(3). For example, in Kaplan v. RCA Corporation, 783 F.2d. 463, 464-65 (4th Cir. 1986), the plaintiff brought an action for the cost of a commercial radio antenna and punitive damages for lost revenues against the seller. Id. The court held that the antenna's "Terms and Conditions of Sale," which expressly disclaimed liability for consequential damages, barred plaintiff's claim for lost revenues. Id. at 466-67. The court explained that the limitation was not unconscionable because the losses were commercial, plaintiff had been in the radio business for several years, and plaintiff had "business acumen and experience." Id. at 467. Further, the court held that even if the repair and replacement provision in the warranty failed in its essential purpose, the provision limiting consequential damages remained enforceable. Id.; see also Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 371-77 (1990) (limitations on consequential damages are enforced under MA UCC 2-719(3) even if the exclusive remedy failed of its essential purpose).

---

[7] Although the difference between the amount for which plaintiff purchased the Paver and the amount for which plaintiff sold the Paver is approximately $35,000, plaintiff's claims for consequential damages and damages pursuant to M.G.L. ch. 93A exceed this Court's $75,000 jurisdictional threshold.

Here, both Warranties expressly disclaim any liability for "special," "indirect" or "consequential" damages. See Statement of Material Facts to Which There is No Genuine Issue, *supra*, ¶ 11, 16. There is nothing about the Warranty provisions which approaches the level of unconscionability, especially considering that this was a commercial transaction between sophisticated parties. In plaintiff's own words:

> Murray is and has been, a customer of Seller for many years, and has purchased many types of equipment and machinery from Seller, for use by Murray in its business. Murray is intimately familiar with paving equipment, in general, and "pavers" in particular, and has purchased and used many "pavers" during its existence…

Complaint, ¶ 5. Like the plaintiff in Kaplan, Murray was a sophisticated purchaser who was familiar with pavers and equipment sold by Ingersoll-Rand. Accordingly, plaintiff's claim for consequential damages is barred by Section 2-719(3) and judgment should enter in favor of Ingersoll-Rand on Count 1 of the Complaint.

### C. Plaintiff is Not Entitled to Damages Pursuant to M.G.L. ch. 93A.

Judgment should enter for Ingersoll-Rand on plaintiff's Chapter 93A claim (Count 3) because the provisions in the Warranties limiting Ingersoll-Rand's liability for consequential damages also bar plaintiff's Chapter 93A claim under Massachusetts law. In Canal Electric Company, 406 Mass. at 377-78, the Massachusetts Supreme Judicial Court held that contract provisions limiting consequential damages under MA UCC 2-719(3) bar claims under Chapter 93A where the claims are "duplicative of the breach of warranty claim." (The SJC also held that Chapter 93A claims are barred even in situations where the exclusive remedy failed of its essential purpose. Id.) Here, plaintiff's Chapter 93A claim is nothing more than a repackaging of its breach of warranty claim, and is therefore barred by the Paver's Warranties.

Moreover, even if every fact asserted in the Complaint were true (which Ingersoll-Rand denies), plaintiff has not alleged any conduct by Ingersoll-Rand that approaches the level of "rascality" or "rancid flavor of unfairness" required to find a violation of Chapter 93A. See St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 66 (1st Cir. 2001). Liability under Chapter 93A requires "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party..." Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000) (citations omitted). In business disputes, a breach of warranty is not a *per se* violation of Chapter 93A, but instead "must be resolved by reference to general principles of liability under § 11." See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737, 746-47 (1994). The standard for proving a breach of Chapter 93A is higher in a business context than in a consumer one, as "[o]ne can easily imagine cases where an act might be unfair if practiced upon a commercial innocent, yet would be common practice between two people engaged in business." See Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983).

In this case, Ingersoll-Rand has bent over backwards to accommodate plaintiff (including by offering to fly plaintiff's president to the paver factory) and has <u>always</u> offered to repair the Paver pursuant to the terms of the Warranties. Plaintiff has not pled any facts, and cannot introduce any evidence, which take this action out of the realm of a typical commercial dispute. At best, plaintiff can hope to prove no more than garden-variety breach of contract by Ingersoll-Rand. Accordingly, plaintiff's Chapter 93A claim is barred and judgment should enter in favor of Ingersoll-Rand on Count 3.


**IV.   SUMMARY JUDGMENT MUST ENTER BECAUSE PLAINTIFF HAS WAIVED ITS SOLE REMEDY BY SELLING THE PAVER.**

The foregoing demonstrates that, as a matter of law, (1) plaintiff's claims are limited to breach of the express terms in the Warranties, and (2) plaintiff's sole remedy is repair of the Paver. Thus, the only relief plaintiff properly could have demanded in its Complaint was repair of the Paver. Now that plaintiff has sold the Paver, however, plaintiff has effectively waived the only remedy to which it was entitled. Accordingly, plaintiff now has no basis to assert any claims against Ingersoll-Rand whatsoever, and judgment should enter in favor of Ingersoll-Rand on plaintiff's Complaint in its entirety.

**V.   PLAINTIFF'S CLAIMS AGAINST INGERSOLL-RAND EQUIPMENT & SERVICES COMPANY SHOULD BE DISMISSED.**

Plaintiff's claims against "Ingersoll-Rand Equipment & Services Company" should be dismissed, as Ingersoll-Rand Equipment & Services ("IRES") is not incorporated and is nothing more than a d/b/a of Ingersoll-Rand. Plaintiff does not argue that IRES is an individual corporate entity. Complaint, ¶ 2. (IRES "is a trade name used by Ingersoll-Rand Company for purposes of marketing Blaw-Knox machinery and equipment.") Accordingly, IRES lacks corporate existence and capacity to be sued pursuant to Rules 9 and 17 of the Federal Rules of Civil Procedure and should be dismissed from this action.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment should be granted and plaintiff's Complaint should be dismissed, with prejudice, in its entirety.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Ingersoll-Rand requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

INGERSOLL-RAND COMPANY,

By its attorneys,

/s/ Carter D. Morse, Jr.
Jeffrey S. Follett (BBO No. 564337)
Carter D. Morse, Jr. (BBO No. 636645)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110
(617) 832-1000

Date: November 30, 2004

### Certificate of Service

I certify that on November 30, 2004, I served the foregoing document on plaintiff by causing a copy of the same to be delivered by HAND DELIVERY to its counsel of record: Peter F. Davis, 15 Broad Street, Suite 512, Boston, Massachusetts 02109.

/s/ Carter D. Morse, Jr.
Carter D. Morse, Jr.