710 A.2d 1045
311 N.J.Super. 607, 710 A.2d 1045, 35 UCC Rep.Serv.2d 892
**(Cite as: 311 N.J.Super. 607, 710 A.2d 1045)**

**C**

Superior Court of New Jersey,
Appellate Division.

Russell PALMUCCI, Plaintiff-Appellant,
v.
BRUNSWICK CORPORATION d/b/a Mercruiser and Sanborn Marine Center, Defendants-Respondents.

Argued March 24, 1998.
Decided May 21, 1998

Buyer of new boat engine with problems of unknown cause brought action against seller and manufacturer, claiming breach of warranty, violations of Consumer Fraud Act, strict liability in tort, and negligence. The Superior Court, Law Division, Ocean County, granted defendants' application for directed verdict. Buyer appealed. The Superior Court, Appellate Division, Kleiner, J.A.D., held that: (1) buyer's failure to abide by requirements of limited warranty precluded recovery on breach of warranty claim, and (2) manufacturer's policy determining when it would replace entire engine did not violate Consumer Fraud Act.

Affirmed.

West Headnotes

[1] Sales 🔑426
343k426

Boat engine warranty, which gave manufacturer the right to repair or replace at its option, was permitted under Uniform Commercial Code (UCC), as warranty clearly expressed parties' intent to limit remedies. N.J.S.A. 12A:2-719.

[2] Sales 🔑119
343k119

Although revocation of acceptance is available to the purchaser of a defective product, that right does not accrue where the product is sold with a limitation of remedy, unless circumstances cause limited remedy to fail of its essential purpose. N.J.S.A. 12A:2-608, 12A:2-719(2).

[3] Sales 🔑286
343k286

Buyer of boat engine with problems of unknown cause could not recover on breach of warranty claim against manufacturer and seller, where buyer did not allow manufacturer to use "repair or replace" remedy that limited warranty permitted. N.J.S.A. 12A:2-719.

[4] Evidence 🔑571(6)
157k571(6)

[4] Sales 🔑119
343k119

Buyer of new boat engine, who sought to revoke acceptance upon discovery of engine problems of unknown cause, failed to prove prima facie case that defect in engine substantially impaired its value to him; the most buyer proved at trial was that the engine made noise and lost power, buyer's own examination and that of defendant's expert showed that studs had not "backed out," and buyer did not present any other evidence to show if anything else might have been wrong with engine. N.J.S.A. 12A:2-608(1).

[5] Consumer Protection 🔑4
92Hk4

Breach of warranty or breach of contract is not per se unfair or unconscionable and does not alone violate the Consumer Fraud Act. N.J.S.A. 56:8-2.

[6] Consumer Protection 🔑6
92Hk6

Manufacturer's policy of replacing boat engine only if more than 70% of it needed replacement, but otherwise repairing engine pursuant to its limited warranty, was not an unconscionable business practice violating Consumer Fraud Act. N.J.S.A. 56:8-2.

****1045 *609** Ira Gottlieb, Roseland, for plaintiff-appellant (Lasser Hochman, attorneys; Mr. Gottlieb, on the brief).

Kevin M. McKeon, Marlton, for defendant-respondent Brunswick Corporation (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. McKeon, on the brief).

William E. Paulus, for defendant-respondent Sanborn Marine Center (Charles P. Hopkins, II, attorney, Shrewbury; Laura G. Degnan, Hackensack, on the brief).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit H
(MEMORANDUM OF LAW IN SUPPORT OF INGERSOLL-RAND COMPANY'S MOTION FOR SUMMARY JUDGMENT)

Before Judges STERN, KLEINER and KIMMELMAN.

The opinion of the court was delivered by

****1046** KLEINER, J.A.D.

In this appeal, we are required to compare two separate provisions of the Uniform Commercial Code: *N.J.S.A.* 12A:2-608 and *N.J.S.A.* 12A:2-719.

*N.J.S.A.* 12A:2-608 provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

***610** 3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

*N.J.S.A.* 12A:2-719 provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Chapter and may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

I

Plaintiff, Russell Palmucci, a boat enthusiast, purchased from defendant Sanborn Marine Center (Sanborn) a new 5.7 liter engine manufactured by defendant Brunswick Corporation d/b/a/ Mercruiser (Brunswick). Sanborn installed the engine in a boat which plaintiff already owned. After approximately three to five hours of use, it developed problems of an unknown cause. Plaintiff brought the boat back to Sanborn which, after consulting with Brunswick, agreed to fix the problem. However, plaintiff demanded either a new engine or a refund. When Sanborn refused either to provide plaintiff with a new engine or to refund the purchase price, plaintiff placed the boat in storage. Plaintiff then filed a complaint alleging breach of warranty under the Uniform Commercial Code, violations of the Consumer Fraud Act, *N.J.S.A.* 56:8-1 to -47, strict liability in tort, and negligence.

Prior to trial, plaintiff sought to call Brunswick's expert witness as a witness in his direct case. Plaintiff's application was denied. At trial, when plaintiff rested his case, the trial judge granted ***611** defendants' joint application for a directed verdict pursuant to *Rule* 4:37-2 and *Rule* 4:40-1.

Plaintiff appeals, contending that he did, in fact, prove a *prima facie* case under each count of his complaint, thus precluding a directed verdict, and that the trial court erred when it barred him from using Brunswick's expert as a witness in his direct case. We disagree and affirm.

****1047** II

On July 25, 1995, plaintiff took delivery of his boat with the new engine sold to him and installed by Sanborn. On that same date, plaintiff was given a warranty book containing the following conspicuously written engine warranty:

> Our obligation under this Warranty shall be limited to repairing a defective part, or at our option, refunding the purchase price or replacing such part or parts as shall be necessary to remedy any malfunction resulting from defects in material or workmanship as covered by this Warranty.

The warranty also conspicuously provided that all incidental or consequential damages were excluded and that there were no warranties of merchantability

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

and fitness. Other implied warranties were limited to the life of the warranty, which was one year from the date of purchase. The warranty also stated: "Engine noise does not necessarily indicate a serious engine problem. If diagnosis indicates a serious internal engine condition which could result in a failure, condition responsible for noise should be corrected under the warranty."

Plaintiff explained at trial that on the date of delivery he drove the boat from the Sanborn location to his home in Point Pleasant. That trip took approximately one hour. Two weeks later, plaintiff took a boat trip with some friends. They traveled one hour to their intended destination. On the return trip, the engine began to make a loud noise. Plaintiff indicated the noise sounded like the engine had no oil. Plaintiff shut the engine down immediately.

Plaintiff indicated that he opened the hatch and looked for oil on the engine and any parts that might have come loose. He ***612** discovered that the engine did have oil. Based on his prior boating experience and his own experiences working with and repairing engines, he concluded that the noise he heard was "definitely in the valve train." He restarted the engine and proceeded to his home. He estimated that the total use of the new engine was between three and five hours.

The following day plaintiff contacted Sanborn. Plaintiff was directed to bring the boat in for inspection. Thereafter, plaintiff was informed by telephone by a Sanborn employee that the "studs pulled." When plaintiff returned to Sanborn, he was advised that Sanborn intended to replace the heads. [FN1] Plaintiff informed Sanborn he did not want the boat repaired. He explained that he had bought a new engine and he wanted a new engine. Plaintiff testified that Sanborn informed him that Brunswick would not replace the engine.

FN1. At trial, plaintiff described the head as the "part that sets over top of the pistons" and "a major component of the engine. An engine will not run without a head."

III

[1][2] The warranty in this case is permitted under the provisions of *N.J.S.A.* 12A:2-719, *supra,* because the parties' intent to limit remedies was "clearly expressed." *N.J.S.A.* 12A:2-719 cmt. 2. Plaintiff contends that *N.J.S.A.* 12A:2-608 permitted him to revoke acceptance of the engine because the defect substantially impaired the product's value to him. Although revocation of acceptance is available to the purchaser of a defective product pursuant to *N.J.S.A.* 12A:2-608, that right does not accrue where, as here, the product is sold with a limitation of remedy. Under *N.J.S.A.* 12A:2- 719(2), plaintiff was not entitled to relief under section 12A:2-608 unless circumstances caused the limited remedy "to fail of its essential purpose." *N.J.S.A.* 12A:2-719(2).

[3] Although the U.C.C. does not explicitly require a buyer of a defective product to allow a seller to "cure" the defect in a ***613** product after the buyer has accepted it, the warranty in this case, which is permitted under the U.C.C., gave the manufacturer the right to repair or replace at its option. Since plaintiff did not abide by the requirements of the warranty in that he did not allow the manufacturer to use the remedy the warranty permitted, he was not entitled to recovery under his breach of warranty claim. A directed verdict was therefore appropriate. *See R.* 4:37-2(b); *R.* 4:40-1.

****1048** *N.J.S.A.* 12A:2-719 specifically permits a warranty contract to limit remedies available to a buyer and to provide that the seller may repair a defective product instead of permitting the buyer to revoke acceptance of a defective product within the scope of *N.J.S.A.* 12A:2-608. Here, defendants took advantage of *N.J.S.A.* 12A:2-719 and provided for remedies in addition to or in substitution for those provided in the U.C.C. "by limiting the buyer's remedies to ... repair and replacement of non-conforming goods or parts...." *Ibid.* Since the warranty excludes warranties of fitness and merchantability, limits the duration of other implied warranties to one year from the purchase date, and states "our obligation ... *shall be limited* " to repairing, refunding, or replacing, at the seller's option, the provision meets the requirements embodied in *N.J.S.A.* 12A:2-719(1)(b), that the remedy is "expressly agreed to be exclusive, in which case it is the sole remedy." (emphasis added)

We thus conclude that plaintiff had an obligation to allow defendants to try to repair the engine. While defendants did not have the statutory right under the U.C.C. to cure any defect discovered after acceptance of the engine, defendants did have a right to expect plaintiff to comply with the terms of the warranty. Plaintiff's reliance on *N.J.S.A.* 12A:2-608 is therefore misplaced. The provisions permitting revocation of acceptance are inapplicable where the terms of a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

warranty limit the purchaser's remedies.

Even if *N.J.S.A.* 12A:2-608 were applicable, because defendants never had a chance to try to repair the engine, we cannot infer that the defect, although not identified, was serious and incapable ***614** of repair. Thus, it is not possible to conclude that the defect caused a substantial impairment in value under *N.J.S.A.* 12A:2-608(1). *See General Motors Acceptance Corp. v. Jankowitz,* 216 *N.J.Super.* 313, 334, 523 *A.*2d 695 (App.Div.1987) ("The buyer has the burden to prove that the revocation was proper and justified, including proof that the breach caused a substantial impairment in the value of the contract to the buyer."); *see also Herbstman v. Eastman Kodak Co.,* 68 *N.J.* 1, 9, 342 *A.*2d 181 (1975) ("The requirement that there must be substantial impairment of value before the buyer may revoke acceptance precludes revocation for trivial defects or defects which may be easily corrected."). Further, defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the engine. *See N.J.S.A.* 12A:2- 719(2); *Jankowitz, supra,* 216 *N.J.Super.* at 329, 523 *A.*2d 695 ("[T]he exclusive remedy of repair and replacement of defective parts fails of its essential purpose if, after numerous attempts to repair, the [boat] did not operate as a new [boat] should free of defects.").

[4] Here, the most plaintiff had proven at trial was that the engine made noise and lost power, and that while Sanborn's mechanics thought the "studs had backed out," plaintiff's own examination and that of defendant's expert showed that that was not the case. Plaintiff did not present any other evidence to show if anything else might have been wrong with the engine. He had not had his own mechanic examine it nor had he attempted to have anyone else determine what was wrong with it. Thus, plaintiff failed to prove a *prima facie* case that the defect in the engine substantially impaired its value to him. [FN2]

FN2. Plaintiff's reliance on *Zabriskie Chevrolet, Inc. v. Smith,* 99 *N.J.Super.* 441, 240 *A.*2d 195 (Law Div.1968), in support of his contention that he had the right to revoke acceptance without first affording defendants the opportunity to cure the defect is misplaced. As we read *Zabriskie,* that decision hinged on an application of *N.J.S.A.* 12A:2-508, as the buyer there had never accepted the automobile, *id.* at 457-58, 240 *A.*2d 195, and the decision did not apply *N.J.S.A.* 12A:2-608, although this section of the U.C.C. was discussed in the trial court opinion. *N.J.S.A.* 12A:2-508 provides a statutory right to cure where a buyer rejects a tender. Once a buyer accepts a product with a limited warranty, however, he must comply with the warranty before revocation under *N.J.S.A.* 12A:2-608 is applicable.

***615** Lee R. Russ, Annotation, *What Constitutes "Substantial Impairment" Entitling Buyer to Revoke His Acceptance of Goods Under U.C.C. § 2-608(1),* 38 *A.L.R.* 5th 191 (1996), discusses what type of evidence a buyer must put forth in order to prove that the non-conformity substantially impaired the value of the item to him or her:

> ****1049** While no list could be exhaustive of the potential circumstances that may come into play, the considerations tend to include: the nature of the defects; the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted; the degree to and ways in which the buyer is inconvenienced by the nonconformities; and the availability and cost of alternative goods pending repair attempts.
>
> [*Id.* at 223.]

Plaintiff simply failed to prove any of these items. Accordingly, a directed verdict was appropriate.

IV

At trial, plaintiff established that it was defendant Brunswick's policy not to replace an engine unless it was more than seventy percent defective. Plaintiff contends that Brunswick's policy violates the Consumer Fraud Act, specifically, *N.J.S.A.* 56:8-2. [FN3] We disagree.

FN3. *N.J.S.A.* 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....

[5] We are guided by *Kugler v. Romain,* 58 *N.J.* 522, 279 *A.*2d 640 (1971), in which the Court discussed the concept of unconscionability: "Thus we believe that in consumer goods transactions ***616** such as those

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

710 A.2d 1045
**(Cite as: 311 N.J.Super. 607, *617, 710 A.2d 1045, **1050)**

PLAINTIFF'S NEGLIGENCE CLAIM AGAINST DEFENDANT SANBORN.

*POINT VII*

THE INTERESTS OF FAIRNESS REQUIRE REASSIGNMENT TO A NEW TRIAL JUDGE ON REMAND.

Affirmed.

311 N.J.Super. 607, 710 A.2d 1045, 35 UCC Rep.Serv.2d 892

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

783 F.2d 463
783 F.2d 463, 42 UCC Rep.Serv. 1312
**(Cite as: 783 F.2d 463)**

United States Court of Appeals,
Fourth Circuit.

Bernard A. KAPLAN; James J. Shipley; Norma Kaplan; Edward Englander,
Appellants,
v.
RCA CORPORATION, a Delaware corporation,
Appellee.

No. 85-1536.

Argued Dec. 3, 1985.
Decided Feb. 13, 1986.

Buyer of transmission antenna brought action against seller. The United States District Court for the Western District of North Carolina, at Statesville, Robert D. Potter, Chief Judge, entered judgment in favor of seller, and buyer appealed. The Court of Appeals, Motz, District Judge, sitting by designation, held that: (1) parties entered into a binding agreement for purchase and sale of transmission antenna at time seller submitted its formal proposal, and "terms and conditions of sale," which were contained in the formal proposal became part of parties' contract; (2) seller's limited warranty to repair or replace transmission antenna did not fail of its essential purpose; and (3) seller's disclaimer of liability for consequential damages, included as condition for sale of transmission antenna, was not unconscionable and void.

Affirmed.

West Headnotes

[1] Contracts 🔑129(1)
95k129(1)
New Jersey had reasonable relationship to transaction in which transmission antenna was sold so that New Jersey law could apply to buyer's action against seller, as provided by parties' contract, where seller maintained its principal offices in New Jersey, contract documents were prepared and finally accepted in New Jersey and antenna was designed, engineered and tested there.

[2] Sales 🔑59
343k59
Parties entered into a binding agreement for purchase and sale of transmission antenna at time seller submitted its formal proposal, and "terms and conditions of sale," which were contained in the formal proposal became part of parties' contract, despite contention that they materially altered prior agreement.

[3] Sales 🔑426
343k426
Under New Jersey law, seller's limited warranty to repair or replace transmission antenna did not fail of its essential purpose, thus rendering its disclaimer of consequential damages void, where seller replaced antenna within a reasonable time after learning of its defects. N.J.S.A. 12A:2-719(1, 2).

[4] Sales 🔑267
343k267
Under New Jersey law, seller's disclaimer of liability for consequential damages, included as condition for sale of transmission antenna, was not unconscionable and void where buyers were experienced businessmen and exclusion was capitalized and in bold-faced type. N.J.S.A. 12A:2-719(3).

***463** Thomas P. Mains, Jr., Alexandria, Va., for appellants.

William L. Auten, Charlotte, N.C. (J.W. Alexander, Jr., Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for appellee.

***464** Before WINTER and PHILLIPS, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

MOTZ, District Judge:

This action arises from the purchase by Metrolina Communications Corporation, a company controlled by appellants Bernard Kaplan and James J. Shipley, of an FM radio transmitting antenna from RCA. [FN1] After conducting a jury trial on one issue and holding an evidentiary hearing on the others, the district court entered a judgment in favor of RCA. Appellants raise three substantive issues on this appeal: (1) whether RCA's standard Terms and Conditions of Sale were part of the contract between the parties; (2) whether one of those terms and conditions, limiting RCA's warranty responsibilities to repairing or replacing defective parts, failed of its essential purpose; and (3) whether another of the terms and conditions, disclaiming liability for consequential damages, is unconscionable and void. Intertwined among appellants' arguments on the first two issues is a contention that the district court improperly resolved certain factual disputes instead

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

of submitting them to the jury.

FN1. Metrolina has gone out of business and has been liquidated. After this suit was filed, its shareholders, Bernard and Norma Kaplan, James J. Shipley, and Edward Englander were substituted as plaintiffs.

FACTS

In 1979 Kaplan and Shipley purchased radio station WOOO-FM in Statesville, North Carolina. Before making the purchase and deciding on the site on which to build their antenna tower, they hired a professional radio engineer to study whether they could obtain adequate signal coverage in the areas in which they wished to broadcast. In response to a request from this engineer, RCA submitted to Shipley a proposal for a study of the signal pattern likely to be achieved by an antenna constructed by RCA. Shipley accepted RCA's proposal on behalf of Metrolina.

By letter dated November 26, 1979, after completing its pattern study, RCA wrote to Shipley quoting the current price for an antenna and indicating that "we will be pleased to issue a formal proposal at your request." Kaplan and Shipley, who had in the meantime consummated their purchase of the station and the tower site, were awaiting FCC approval of the modifications to the station, including change of the location, height of the tower and an increase in the output, before ordering the antenna. When this approval was obtained, Shipley called Mr. Strubel at RCA with whom he had been dealing and advised him that "we can now go ahead and do this thing." Strubel replied that he would expedite the transaction but Mr. Huffman had to approve it. By letter dated July 31, 1980, Huffman sent Shipley a proposal for the purchase and sale of the antenna.

The cover folder to the proposal stated that RCA proposed "to furnish the equipment and services described on Schedule A of this proposal, subject to the terms and conditions of sale contained herein." Among the materials contained in the folder was one entitled "Terms and Conditions of Sale, Broadcast and Teleproduction Equipment BC-08444." The Terms and Conditions limited RCA's warranty to repair or replacement of the antenna and disclaimed liability for consequential damages. They also provided that "this agreement expresses the entire intent and understanding of the parties with reference to the subject matter hereof." Substantially the same document had been part of the proposal for the pattern study which Shipley had earlier signed and accepted.

After receiving the antenna proposal Shipley called Huffman and requested that the price--which had increased from the quotation in the November 26, 1979 letter--be reduced to the original figure. Huffman indicated that he did not have the authority to make this decision but that he would try to "sell" the idea to his superiors. Shipley then directed Metrolina's secretary/treasurer, LaVelle, to sign the acceptance ***465** of proposal form, modifying only the price term. The acceptance form stated that "we accept your proposal to furnish equipment and services described on Schedule A of BC 08444 dated July 30, 1980, subject to the terms and conditions of sale contained therein." By letter dated September 26, 1980, RCA accepted the reduced price.

RCA constructed and delivered the antenna, and it went into operation at the beginning of February, 1981. A transmission problem immediately developed and Shipley complained to RCA. In April RCA investigated the problem and concluded that there was a defect in the antenna adversely affecting the transmission of signals toward Statesville. Eventually, RCA provided a replacement antenna. However, RCA never admitted that there was any defect in the antenna affecting signal transmission toward Charlotte. It attributed the poor coverage of WOOO-FM in Charlotte to other factors, including the site which Kaplan and Shipley had purchased (at substantial savings in cost) for the placement of the antenna tower.

Because of the poor coverage in Charlotte, Metrolina's advertising revenues shrank and its financial difficulties became insurmountable, prompting the sale of the station in 1982. This action, in which appellants claim 3.75 million dollars in compensatory damages and 7.5 million dollars in punitive damages, ensued.

I.

[1] Appellants first argue that the parties entered into a binding agreement for the purchase and sale of the antenna before RCA submitted its formal proposal on July 31, 1980, and that the "Terms and Conditions of Sale," which were contained in the formal proposal did not become part of the parties'

contract because they materially altered the prior agreement. Alternatively, they contend that the Terms and Conditions did not become part of the contract because the acceptance of proposal form signed by Metrolina did not refer to them.

As a preliminary matter, we note that New Jersey law is applicable to this case. The Terms and Conditions provide that "this Agreement shall be construed and enforced under the law of the State of New Jersey." North Carolina, whose conflict of law rules we must apply, *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), permits the parties to a contract to stipulate the state whose law is to govern a contract if that state has a reasonable relationship to the transaction. *N.C.Gen.Stat.* Section 25-1-105 (1966); *cf. Bernick v. Jurden,* 306 N.C. 435, 293 S.E.2d 405 (1982); *see also Tanglewood Land Co. v. Byrd,* 299 N.C. 260, 261 S.E.2d 655, 656 (1980); *Richard W. Cooper Agency, Inc. v. Irwin Yacht and Marine Corp.,* 46 N.C.App. 248, 264 S.E.2d 768, 772 (1980). There is such a relationship here. RCA maintains its principal offices in New Jersey, the contract documents were prepared (and finally accepted) in New Jersey and the antenna was designed, engineered and tested there.

[2] On the merits it is clear that there was no contract between the parties before RCA sent out its formal proposal. Prior to that time no terms or conditions of sale had been agreed to by the parties either orally or in writing. Indeed, the price of the antenna was not agreed to until after Metrolina had signed the acceptance of proposal.

It is equally clear that the Terms and Conditions were part of the parties' contract. Appellants' primary thrust below was that the Terms and Conditions had not been included among the materials in the proposal. Shipley denied having received them. However, the jury--on the basis of overwhelming evidence--disbelieved him and, in response to a special interrogatory, found that RCA's terms and conditions were included in the package sent to him. Appellants now rely upon more technical grounds. They point to the language in the acceptance of proposal that "we accept your proposal to furnish equipment and services described on Schedule A of BC ***466** 08444 dated July 30, 1980 subject to the terms and conditions of sale contained *therein.*" They argue that Schedule A itself does not contain the terms and conditions limiting RCA's warranty and excluding its liability for consequential damages.

Considered alone, the quoted language might appear to support plaintiffs. However, the contract documents as a whole establish beyond doubt that the terms and conditions referred to are the separate Terms and Conditions contained in the proposal package. The cover folder to the proposal states that RCA will "furnish the equipment and services described on Schedule A of this proposal, subject to the terms and conditions of sale contained *herein.*" The proposal number is included in the title of the separate Terms and Conditions. Moreover, Schedule A merely describes the antenna and states the price.

Appellants make a related argument that the district court too narrowly framed the issue to be decided by the jury on this point. The jury was asked to find whether RCA had sent the Terms and Conditions to Metrolina with Huffman's confirmatory letter of July 31, 1980. Appellants argue that the jury should have been asked to find whether the terms and conditions were expressly accepted by Metrolina. Appellants did not specifically object to the issue as submitted to the jury by the court as required by *Fed.R.Civ.P.* 49(a). Furthermore, after the trial, they submitted a memorandum stating that one of the issues which remained to be *determined by the court* was whether the Terms and Conditions became part of the parties' contract. In any event, as Shipley himself recognized by his denial, the critical fact was precisely the one determined by the jury: whether the terms and conditions were included in the proposal which Shipley received. The jury's "yes" answer to that question is dispositive.

II.

[3] Appellants next argue that RCA's limited warranty to repair or replace the antenna failed of its essential purpose and that its disclaimer of consequential damages is therefore void. Again, they make an ancillary contention that the district court improperly made factual findings on matters that should have been submitted to a jury. Again, they have not preserved the latter point for appeal. To the contrary, in their post-trial memorandum they specified as one of the issues remaining for determination by the court "did the limited warranty fail of its essential purpose?" [FN2]

FN2. Appellants also complain of a subsequent memorandum opinion rendered by the district court finding in favor of RCA's counterclaim on

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

> the $6,893.34 balance due on the antenna's purchase price. They allege that in this opinion too the judge made findings that should have been made by the jury. However, the district court specifically noted in its opinion that they had informed the court that they did not wish the questions raised by the counterclaim to be tried before a jury. Further, in its July 11, 1985 order stating its intention to rule on the counterclaim, the court invited further submissions on the issues raised. The parties declined to do so. Although appellants may have misunderstood which factual questions the court would consider in resolving the counterclaim, the court's findings pertained to material issues and appellants cannot now retract their jury trial waiver. *See United States v. 1966 Beechcraft Aircraft,* 777 F.2d 947, 951 (4th Cir.1985).

Section 2-719(1) of the Uniform Commercial Code authorizes contracting parties to limit otherwise available remedies. New Jersey law incorporates this provision. *N.J.Stat.Ann.* section 12A:2-719(1). New Jersey law also incorporates section 2-719(2) of the U.C.C. which provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." *N.J.Stat.Ann.* section 12A:2-719(2). Appellants argue that RCA's warranty failed because RCA did not correct the defects in the original antenna within a reasonable period of time.

While the timeliness of remedial measures is relevant to the question of whether the warranty has been effective, *see, e.g. Chatlos Systems, Inc. v. National Cash Register Corp.,* 635 F.2d 1081 (3rd Cir.1980), the district court, after holding an ***467** evidentiary hearing, found that RCA had replaced the antenna within a reasonable period. This finding was supported by the evidence and is not clearly erroneous. Further, a finding that the repair and replacement warranty had failed would not void RCA's exclusion of consequential damages provision as well. Although some courts have adopted that position, *e.g. R.W. Murray Co. v. Shatterproof Glass Corp.,* 758 F.2d 266, 272 (8th Cir.1985); *Beal v. General Motors Corp.,* 354 F.Supp. 423, 426 (D.Del.1973), New Jersey law is to the contrary. *Chatlos Systems, Inc.,* 635 F.2d at 1085-86; *see also AES Technology Systems, Inc. v. Coherent Radiation,* 583 F.2d 933, 941 (7th Cir.1978). Accordingly, even if RCA's repair and eventual replacement of the antenna had been found to be ineffective, appellants would have been entitled only to the alternative remedy provided for by the contract--the refund of the purchase price.

III.

[4] Appellants' final contention is that the provision in the Terms and Conditions disclaiming liability for consequential damages is unconscionable and void under *N.J.Stat.Ann.* section 12A:2-719(3). This contention is without merit.

The factors determining "unconscionability" are various: the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *See, e.g., Chatlos Systems, Inc.,* 635 F.2d at 1087; *Abel Holding Co. v. American District Tele. Co.,* 138 N.J.Super. 137, 350 A.2d 292, 303-05 (1975); *cf. Herbstman v. Eastman Kodak Co.,* 131 N.J.Super. 439, 330 A.2d 384, 388-89 (1974).

None of these factors dictate a finding of unconscionability here. The losses suffered by Metrolina were commercial. While Metrolina was a small company compared to RCA, Shipley had been in the radio business for forty years and Kaplan and Shipley had business acumen and experience. Nothing required appellants to deal with RCA; they could well have purchased the antenna from another manufacturer. They had hired expert consultants for advice concerning the engineering. Nor was the clause excluding liability for consequential damages "lost in a linguistic maze" or a surprise to appellants. The type was bold-faced and was capitalized and had been included in the parties' prior contract for the pattern study. Furthermore, the clause was reasonable. RCA certainly did not have to subject itself to multi-million dollar liability for consequential losses by supplying a radio antenna for $12,000. It could, as it did, properly allocate that risk to Metrolina.

AFFIRMED.

783 F.2d 463, 42 UCC Rep.Serv. 1312

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.