UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MURRAY PAVING & RECLAMATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INGERSOLL-RAND EQUIPMENT & SERVICES COMPANY and INGERSOLL-RAND COMPANY,<br><br>Defendants. | CIVIL ACTION No. 04-10328 GAO |

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF INGERSOLL-RAND COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1, defendant Ingersoll-Rand Company ("Ingersoll-Rand") hereby submits the following statement of undisputed facts in support of its motion for summary judgment on all claims asserted by plaintiff Murray Paving & Reclamation, Inc.[1]

**A.   Ingersoll-Rand Sells Pavers and Does Business As Ingersoll-Rand Equipment & Services**

1.     Ingersoll-Rand is a New Jersey corporation that manufactures and sells a variety of products, including Blaw-Knox® pavers.   Affidavit of Larry Drapeau, dated November 24, 2004 ("Drapeau Aff."), ¶ 3.  Attached as Exhibit A to the Drapeau Aff. are Ingersoll-Rand marketing materials concerning the type of paver at issue in this case.  Drapeau Aff., ¶ 3.

---

[1] Ingersoll-Rand accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

2.      Ingersoll-Rand sometimes does business as Ingersoll-Rand Equipment & Services ("IRES"), located in Southboro, Massachusetts, for the purpose of distributing Blaw-Knox pavers and various other Ingersoll-Rand products.    IRES is not incorporated.  Drapeau Aff., ¶ 4.

**B.    Plaintiff is a Sophisticated Purchaser of Industrial Equipment**

3.      According to plaintiff's Complaint ("Complaint"), Murray is in the business of installing streets, sidewalks, tennis courts and parking lots, which require the use of pavers. Murray contracts with private organizations, the Commonwealth of Massachusetts, and various municipalities and other political subdivisions within the Commonwealth of Massachusetts for this work.  Complaint, ¶ 5.

4.      "Murray is and has been, a customer of Seller for many years, and has purchased many types of equipment and machinery from Seller, for use by Murray in its business.  Murray is intimately familiar with paving equipment, in general, and 'pavers' in particular, and has purchased and used many 'pavers' during its existence…" Complaint, ¶ 5.

**C.    Plaintiff Purchased the Paver from Ingersoll-Rand Pursuant to the Terms and Conditions of Sale**

5.      On or about May 1, 2003, Murray purchased a Blaw-Knox paver, model no. FF4410 ("Paver"), from Ingersoll-Rand for $230,100.[2]  Complaint, ¶ 6; Affidavit of Andy Andre, dated November 23, 2004 ("Andre Aff."), ¶ 4.  A true and correct copy of the sales order for the Paver, dated May 1, 2003 ("Sales Order"), is attached to the Andre Aff. as Exhibit A.

6.      The Sales Order provides as follows: "THIS TRANSACTION IS SUBJECT TO INGERSOLL-RAND COMPANY STANDARD TERMS AND CONDITION."  See Exhibit A to Andre Aff.

---

[2] Plaintiff paid a net purchase price of $236,775 for the Paver, which included $230,100 for the Paver, $5,000 for an extended warranty, $2,400 in freight charges and $11,275 in sales tax, minus $12,000 for a piece of machinery traded in by plaintiff.  Andre Aff., ¶ 5; Sales Order at Exhibit A of the Andre Aff.

7.  Ingersoll-Rand's standard Terms and Conditions of Sale consist of a single-sided, one-page document, which was attached to both the Sales Order and the Complaint ("Terms and Conditions"). Andre Aff., ¶ 6. A true and correct copy of the Terms and Conditions is located at Exhibit B of the Andre Aff.

8.  The Terms and Conditions begin by stating the following:

> The Terms and conditions of Sale outlined herein shall apply to the sale by Ingersoll-Rand Company (hereinafter referred to as Equipment). Unless prior written agreement is reached, it shall be understood that the Company's proceeding with any work shall be in accordance with the terms and conditions outlined herein.

See Exhibit B to Andre Aff.

9.  Section 8 of the Terms and Conditions—titled "Warranty"—states that the equipment will be free from defects and Ingersoll-Rand shall repair any such defects, as follows:

> The Company warrants that new Equipment manufactured by it and delivered thereunder will be free of defects in material and workmanship for a period of three (3) months from the date of shipment, whichever shall occur first.
>
> * * *
>
> The Purchaser shall be obliged to promptly report and failure to conform to this warranty to the Company in writing within said period, whereupon the Company shall, at its option, correct such nonconformity, by suitable repair to such Equipment or, furnish a replacement part F.O.B. point of shipment, provided the Purchaser has stored, installed, maintained and operated such Equipment in accordance with the good industry practices and has complied with specific recommendations of the Company.

See Exhibit B to Andre Aff.

D. **The Terms and Conditions Expressly Disclaim All Implied Warranties**

    10. Aside from the foregoing, the Terms and Conditions expressly disclaim <u>all</u> other warranties and states that correction of non-conformities shall constitute fulfillment of all liabilities of Ingersoll-Rand, as follows:

> The effects of corrosion, erosion and normal wear and tear are specifically excluded from the Company's warranty. Performance warranties, if any, are limited to those specifically stated within the Company's proposal.
>
> THE COMPANY MAKES NO OTHER WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER, EXPRESSED OR IMPLIED, EXCEPT THAT OF TITLE, **AND ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED.**
>
> **Correction by the Company of nonconformity's whether patent or latent, in the manner and for the period of time provided above, shall constitute fulfillment of all liabilities of the Company for such nonconformity's**, whether based on contract warranty, negligence, indemnity, strict liability or otherwise with respect to or arising out of such Equipment.

(All caps in original; bold emphasis added.) <u>See</u> Exhibit B to Andre Aff.

E. **The Terms and Conditions Also Limit Plaintiff's Remedies**

    11. In addition to limiting the Paver's warranties, Section 9 of the Terms and Conditions—titled "Limitations of Liability"—limits plaintiff's remedies to those remedies set forth in the Terms and Conditions (i.e., repair of non-conformities):

> **The remedies of the Purchaser set forth herein are exclusive,** and the total liability of the Company with respect to this contract or the Equipment and services furnished hereunder, in connection with the performance or breach thereof, or from the manufacture, sale, delivery, installation, repair or technical direction covered by or furnished under this contract, whether based on contract, warranty, negligence, indemnity, strict liability or otherwise, shall not exceed the purchase price of the unit of Equipment which such liability is based.

> **The Company and its suppliers shall in no event be liable to the Purchaser any successors in the interest or any beneficiary or assignee of this contract for any consequential, incidental, indirect, special or punitive damages** arising out of this contract or any breach thereof, or any defect in, or failure of, or malfunction of the Equipment hereunder, whether based upon loss of use, lost PROFITS or revenue, interest, lost goodwill, work stoppage, impairment of other goods, loss by reason of shutdown or non-operation, increased expenses of operation, cost of purchase of replacement power of claims of purchasers or customers of Purchasers for service interruption whether or not such loss or damage is based on contract, warranty, negligence, indemnity, strict liability or otherwise.

(All caps in original; bold emphasis added.) See Exhibit B to Andre Aff.

12. Lastly, the Terms and Conditions state that the "right and obligations of the parties shall be governed by the laws of the State of New Jersey." See Exhibit B to Andre Aff.

F. **The Blaw-Knox Warranty Also Limits the Paver's Warranty and Plaintiff's Remedies**

13. In addition to the Terms and Conditions, the rights and remedies of the plaintiff are governed by a three-year extended warranty that plaintiff purchased from Ingersoll-Rand when plaintiff purchased the paver ("Blaw-Knox Warranty"). Andre Aff., ¶ 7. A true and correct copy of the Blaw-Knox Warranty is attached to the Andre Aff. as Exhibit C.[3]

14. Like the Terms and Conditions, the Blaw-Knox Warranty states that all new equipment will "be free from defects in material and workmanship (when subject to normal and proper usage)..." See Exhibit C to Andre Aff.

15. Also like the Terms and Conditions, the Blaw-Knox Warranty states that all defects will be repaired, which is the limit of the manufacturer's liability:

> Notice must be given to the servicing Blaw-Knox distributor upon discovery of such defects, and parts returned for inspection. Parts found defective by Blaw-Knox's inspection will be repaired or

---

[3] Blaw-Knox is a trade name used by Ingersoll-Rand for certain products. Drapeau Aff., ¶ 5.

> replaced without cost, F.O.B. point of manufacture. **The foregoing shall be the limit of Blaw-Knox's liability for such defects.**

(Bold emphasis added.) See Exhibit C to Andre Aff.

16. Lastly, the Blaw-Knox Warranty mirrors the Terms and Conditions in that it disclaims all other warranties and indirect or consequential damages, as follows:

> **EXCEPT AS SET FORTH HEREIN, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE,** NOR OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, NOR ANY PROMISE BY BLAW-KNOX WITH RESPECT TO THE EQUIPMENT COVERED HEREIN. **IN NO EVENT SHALL BLAW-KNOX BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES,** NOR FOR ANY DELAY IN PERFORMANCE OF THIS WARRANTY.

(All caps in original; bold emphasis added.) See Exhibit C to Andre Aff.

### G. Ingersoll-Rand Offered to Fix or Replace the Paver

17. During the Summer of 2003, plaintiff reportedly experienced problems with the Paver and brought the Paver back to Ingersoll-Rand's IRES facility in Southboro, Massachusetts, for repairs. Complaint, ¶ 8.

18. Plaintiff then demanded that Ingersoll-Rand take back the Paver and refund the purchase price. Complaint, ¶ 10; Andre Aff., ¶ 8.

19. Ingersoll-Rand refused to take back the Paver or refund the purchase price in accordance with the Terms and Conditions and Blaw-Knox Warranty (collectively referred to as "the Warranties" or "both Warranties"). Andre Aff., ¶ 8.

20. Also in accordance with the warranties, however, Ingersoll-Rand offered to fix the Paver. Andre Aff., ¶ 8.

21. Additionally, Ingersoll-Rand offered to replace the Paver with a new machine. In fact, Ingersoll-Rand offered to fly plaintiff's President to the Blaw-Knox factory in

Shippensburg, Pennsylvania, to inspect the facility and meet the people who would build the new paver. Murray rejected these offers and instead brought this suit demanding that Ingersoll-Rand take back the Paver and return the purchase price. Andre Aff., ¶ 9.

22. Ingersoll-Rand has a full-service repair shop and mechanics who are trained to identify and fix problems with Blaw-Knox pavers. Although Ingersoll-Rand is no longer willing to give plaintiff a new paver, Ingersoll-Rand has always maintained that it would repair the Paver pursuant to the Warranties. Andre Aff., ¶ 10, 11; Drapeau Aff., ¶ 6.

H. **Ingersoll-Rand Properly Rejected Plaintiff's M.G.L. ch. 93A Demand**

23. On or about October 10, 2003, plaintiff made demand upon Ingersoll-Rand pursuant to M.G.L. ch. 93A for Ingersoll-Rand to take back the Paver, refund the full purchase price, and compensate plaintiff "for all losses suffered to date." Complaint, ¶ 12; Andre Aff., ¶ 12. A true and correct copy of the demand letter is attached to the Andre Aff. as Exhibit D.

24. On or about October 21, 2003, Ingersoll-Rand responded to plaintiff's Chapter 93A demand letter by stating that "IR has honored, and will continue to honor, its warranty obligations." Andre Aff., ¶ 13. A true and correct copy of Ingersoll-Rand's response letter is attached to the Andre Aff. as Exhibit E.

I. **Plaintiff Sold the "Unsaleable" and "Worthless" Paver for $200,000**

25. Plaintiff asserts that the Paver is in "unsaleable, unusable and essentially worthless condition." Complaint, ¶ 11.

26. Despite this allegation, plaintiff recently sold the Paver to "Aikler Asphalt Paving Co. Inc." for $200,000, which was only $30,100 less than plaintiff paid for the Paver when new in 2003. Affidavit of Carter D. Morse, Jr., Dated November 30, 2004 ("Morse Aff."), ¶ 2. A

true and correct copy of the sales contract between plaintiff and Aikler Asphalt Paving Co., Inc. is attached to the Morse Aff. as Exhibit A.

Respectfully submitted,

INGERSOLL-RAND COMPANY,

By its attorneys,

/s/ *Carter D. Morse, Jr.*
Jeffrey S. Follett (BBO No. 564337)
Carter D. Morse, Jr. (BBO No. 636645)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110
(617) 832-1000

Date: November 30, 2004

### Certificate of Service

I certify that on November 30, 2004, I served the foregoing document on plaintiff by causing a copy of the same to be delivered by HAND DELIVERY to its counsel of record: Peter F. Davis, 15 Broad Street, Suite 512, Boston, Massachusetts 02109.

/s/ *Carter D. Morse, Jr.*
Carter D. Morse, Jr.